IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARMEN N. FELICIANO HERNANDEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HOSPITAL EPISCOPAL SAN LUCAS, INC., et al., <br><br> Defendants. <br><br> v. <br><br> CARMEN N. FELICIANO HERNANDEZ <br><br> Third-Party Defendant | CIVIL NO. 08-1966 (GAG) |

## OPINION AND ORDER

Carmen N. Feliciano Hernandez and her husband Luis M. Diaz Gonzalez, on behalf of their minor daughter, Stephanie Diaz Feliciano (collectively, "Plaintiff") brought suit against Hospital Episcopal San Lucas ("HESL"), Stephanie's attending physicians, and Admiral Insurance Company ("Admiral"), for injuries Stephanie sustained due to alleged negligence committed by the attending physicians during her birth. Presently before the court is Admiral's motion for summary judgment (Docket No. 119) requesting that this court rule that the insurance policy formed between Admiral and HESL is either null or affords no coverage to HESL for the damages alleged in the complaint. After reviewing the submissions and pertinent law, this court **DENIES** Admiral's motion for summary judgment.

**I.   Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

**Civil No. 08-1966 (GAG)**                                    2

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**II.     Factual & Procedural Background**

Stephanie Diaz Feliciano ("Stephanie") was born at HESL on March 16, 2005. She remained hospitalized at HESL until May 20, 2005. During her hospitalization Stephanie required multiple treatments and procedures. As a result of the complications during Stephanie's birth, she was born with a severe neurological disability.

**Civil No. 08-1966 (GAG)**                                                                 3

On July 15, 2008, HESL submitted to Admiral an application for insurance. The policy provided for $1,500,000 in liability for each claim and $6,000,000 in aggregate claims for the life of the contract. The policy covered the term of August 21, 2008, until August 21, 2009, and also included retroactive coverage dating back to June 1,1986. The premium for these services was quoted at $1,190,000. The application for the policy contained a question ("Question D3") which asked the applicant, "Are you aware of any accident, circumstance, or loss which has occurred after the proposed retroactive date, which is likely to result in a claim?" (See Docket No. 119-3 at 49.) In response to this question, HESL answered "No."

On August 27, 2008, Plaintiff filed the complaint in the instant case, alleging that Stephanie's injuries were the result of negligence on behalf of the attending physicians at HESL. HESL was served with the complaint on September 15, 2008. Prior to receiving the complaint on said date, HESL had not received any written demand claiming damages related to the events alleged in the complaint. By September 17, 2008, HESL had notified Admiral of the instant complaint and the summons in the instant case. On September 30, 2008, Admiral sent HESL a "Reservation of Rights Letter", which stated:

> [I]t is not clear at this time if this incident is covered under your policy for the reason and any other sufficient reasons as they may appear, any investigation made or action taken by ourselves or other representatives of this company in connection with this claim must be done with a full ***Reservation of Rights*** we may have under the policy contract

(See Docket No. 144-5 at 2.) (bold italics in original). According to the terms of the agreement, the contract for insurance became binding on November 12, 2008, when it was countersigned by Admiral's authorized representative, President and CEO, James S. Carey. (See Docket No. 119-3 at 5.) On November 12, 2008, Admiral executed the Insurance Policy No. EO000009393-01, which contained an effective date of August 21, 2008.

**III.     Discussion**

Admiral alleges that the insurance policy entered into between itself and HESL affords no coverage to HESL for the damages alleged in Plaintiff's complaint. Admiral avers that by marking "NO" on Question D3, HESL fraudulently misrepresented the existence of any accident,

**Civil No. 08-1966 (GAG)**                         4

circumstance, or loss which had occurred after the proposed retroactive date, which was likely to result in a claim. HESL contends (1) that no such fraudulent misrepresentation occurred, as HESL had no knowledge of any pending claim against it at the time it submitted the application, and (2) regardless, Admiral had considered Plaintiff's claim when approving the policy, as HESL had notified Admiral of Plaintiff's complaint prior to the execution of the insurance policy and therefore Admiral cannot exclude said claim from the policy.

### A.    Misrepresentation

Insurance policies are contracts regulated by the Puerto Rico Insurance Code. Ganapolsky v. Boston Mut. Life Ins. Co., 138 F.3d 446, 448 (1st Cir. 1998) (citing Nieves v. Intercontinental Life, 964 F.2d 60, 63 (1st Cir. 1992)). With respect to the issue of misrepresentations in an application for an insurance policy, "a material misrepresentation or omission may cause the policy to be rescinded." Ocaso, S.A., Compañia de Seguros y Reaseguros v. P.R. Maritime Shipping Auth., 915 F. Supp. 1244, 1255 (D.P.R. 1996). Furthermore, "[i]t is not necessary that misrepresentations be made with actual intent to deceive; it is sufficient if they are false and relate to matters which increase the risk of loss." Zogbe v. SMA Life Assurrance. Co., 837 F. Supp. 471, 472 (D.P.R. 1993). The Insurance Code states in pertinent part that:

> All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of acts, and incorrect statements shall not prevent a recovery under the policy unless:
>
>   (1)   Fraudulent;
>   (2)   Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>   (3)   The insurer in good faith would either not have issued the policy, or would not have issued the policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy of otherwise.

P.R. Laws Ann. tit. 26, § 1110.

Admiral avers that by answering Question D3 in the negative, HESL misrepresented its knowledge of the existence of a potential claim against it resulting from the treatment it provided to Stephanie in 2005. As the movant, Admiral must demonstrate specific facts showing that there

**Civil No. 08-1966 (GAG)**                              5

is no genuine issue of material fact as to HESL's knowledge at the time of its application. In support of this contention, Admiral includes as part of its Uncontroverted Facts (Docket No. 119-2) a number of facts describing the treatment Stephanie received at HESL after she was born. (See Docket No. 119-2 ¶¶ 10-18.) Admiral adopts these facts from the stipulated facts found in the Amended Joint Proposed Pretrial Order. (See Docket No. 104 at 50.) In considering all of these facts, the court finds Admiral's factual allegations to be wholly insufficient to sustain its burden. Even if the court were to take all of the submitted facts as true, they merely indicate that immediately after Stephanie was born, she was assisted by HESL personnel, stabilized, and transferred to the neonatal intensive care unit. Such facts would not necessarily put a hospital on notice of an impending lawsuit arising from medical care that failed to meet the industry standard. Therefore, HESL's failure to relate these events to Admiral does not necessarily indicate a misrepresentation in its application for insurance. As Admiral has failed to produce sufficient evidence for the court to rule, as a matter of law, that HESL misrepresented its knowledge of the likelihood of a claim resulting from Stephanie's treatment, the court **DENIES** summary judgment on these grounds.

Admiral further contends that HESL should not recover on the policy as Admiral is able to show either (1) that it would not have issued the policy; (2) that it would not have issued the policy in as large an amount; or (3) it would not have provided coverage with respect to the hazard resulting in the loss, if it had been aware of the facts surrounding Stephanie's treatment at the time of the issuance of the policy. See P.R. Laws Ann. tit. 26, § 1110. According to the uncontested facts of this case, the insurance policy between Admiral and HESL was not executed until November 12, 2008. (See Docket No. 144 ¶ V.) It is also uncontested that HESL provided Admiral with the complaint in this case by September 17, 2008, over two months before the policy was executed. (See Docket No. 144 ¶ R.) Therefore, prior to Admiral's execution of the policy, it was aware of the allegations against HESL. In response, Admiral presents two "Reservation of Rights" letters, which allegedly indicate that Admiral had reserved its right, prior to the execution of the policy, to contest coverage for damages arising out of this incident. (See Docket Nos. 150-1 & 150-2.) In the first letter, Admiral alleges that "[HESL] was or should have been aware of the severity of the injuries

**Civil No. 08-1966 (GAG)**                                6

sustained by this newly born baby." (See Docket No. 150-1 at 1.) The letter then further states, "If you did not [report this case to your previous carrier] and subsequently failed to report it in your application form, we may consider such an act to be sufficient grounds to preclude coverage for this particular incident." See id. Admiral has also produced the affidavit of Assistant Vice President Carolyn Grob, in which she testifies to her knowledge of the claims assessment and risk evaluation process. In her affidavit, Grob states that if Admiral had been aware of the injuries sustained by Stephanie as well as the length of her stay in the hospital, Admiral would have altered the assessment of risk in granting the policy. However, the court finds that this self-serving affidavit is insufficient to satisfy Admiral's burden in light of the evidence presented by HESL. HESL has demonstrated that Admiral had a two month period in which to consider the terms of the policy in light of the allegations raised in the complaint. Contrary to Grob's sworn statements, Admiral, even with knowledge of the complaint, made no effort to amend the written policy, but instead executed the policy on November 12, 2009, per its original terms. Such evidence belies Grob's testimony, limiting its evidentiary effect. See Palmas Del March Homeowners Ass'n, Inc. v. Fox, 2008 WL 901950, *5 (D.P.R. 2008)("A party's self serving statements are subject to judicial skepticism when they are contradicted by other evidence.") Therefore, the court **DENIES** summary judgment on these grounds.

    **B.**    **Exclusionary Clause**

In its motion for summary judgment, Admiral also points to an exclusionary clause as grounds for exemption from indemnifying HESL for these claims. The clause at issue states, "[t]his policy does not apply to: any liability based on or arising out of any 'professional incident'[1] or circumstances that any 'Insured' knows or should reasonably anticipate would result in a 'claim' *prior to the effective date of this policy*." (See Docket No. 144-1 at 6.) (emphasis added). According

---

[1] A "professional incident" is defined as "a negligent act, error or omission in the rendering of or failure to render 'medical professional services' by [HESL] or a person acting under [HESL's] direction, control or supervision and for whose acts, errors or omissions [HESL is] legally liable." (See Docket No. 144-1 at 6.)

**Civil No. 08-1966 (GAG)**                              7

to the policy, the term "claim" is defined as either (1) a demand received by HESL; or (2) a written notice alleging medical malpractice; (3) service of suit; or (4) reporting, during the policy period, by HESL to Admiral of "any circumstances" that may lead to any of the three events cited before. (See Docket No. 144-1 at 7.) Admiral avers that pursuant to this exclusionary clause, any claim resulting from the treatment provided to Stephanie must be excluded under the contract.

The First Circuit has held that "Puerto Rico law instructs us to read insurance contracts in accordance with their plain meaning, as a whole, and in harmony with the general purposes of the policy." Jewelers Mut. Ins. Co. v. N. Barquet, Inc. 410 F.3d 2, 16 (1st Cir. 2005). The Jewelers court referred specifically to exclusionary clauses, interpreting Puerto Rico law to instruct that they should "only enforce them where their applicability to the case at hand is clear." Id. Furthermore, the burden falls on the insurer to demonstrate the limit of its liability with respect to exclusions. See Fajardo Shopping Ctr., S.E. v. Sun Alliance Ins. Co. of P.R., 999 F. Supp. 213, 224 (D.P.R 1998) (citing PFZ Props. Inc. v. Gen. Accident Ins. Co., 94 J.T.S. 116, 124 (D.P.R. 1994)).

The complaint in this case was filed on August 27, 2008, six days after the effective date of the contract – August 21, 2008. According to the uncontested evidence submitted, this copy of the complaint was the first communication HESL received regarding any liability based on the events alleged in the complaint. Therefore, HESL did not have any knowledge of the previously described claim prior to the effective date of the policy – August 21, 2008. Further, as the court has previously noted, Admiral's evidence, demonstrating HESL's knowledge of the likelihood of an impending malpractice claim, is insufficient for this court to rule, as a matter of law, that the exclusionary clause would apply to HESL's claim in this case. Therefore, the court **DENIES** summary judgment on these grounds as well.

**IV.   Conclusion**

For the foregoing reasons, the court hereby **DENIES** Admiral's motion for summary judgment.

**Civil No. 08-1966 (GAG)**                              8
   **SO ORDERED.**

In San Juan, Puerto Rico this 1st day of September, 2010.


                                                            *s/ Gustavo A. Gelpí*

                                                            GUSTAVO A. GELPI

                                                            United States District Judge